## Alexander Park Mezz, LLC v RL Alexander Park LLC

2025 NY Slip Op 34412(U)

November 19, 2025

Supreme Court, New York County

Docket Number: Index No. 659104/2025

Judge: James E. d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    Hon. James E. d'Auguste                    PART 55

                                         *Justice*

------------------------------------------------------------X

ALEXANDER PARK MEZZ, LLC,

                              Plaintiff,

                - v -

KORE FUND, LTD.,

                              Defendant.

------------------------------------------------------------X

KORE FUND, LTD.,

                              Plaintiff,

                -against-

RL ALEXANDER PARK LLC,

                              Defendant.

------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 659104/2025 |
| MOTION DATE | 10/15/2025, 10/23/2025 |
| MOTION SEQ. NO. | 001 003 |

### DECISION + ORDER ON MOTION

Third-Party
Index No. 595995/2025

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 73, 74, 75, 76, 77, 79, 82, 98, 108, 109, 110, 111

were read on this motion to/for            INJUNCTION/RESTRAINING ORDER            .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 64, 65, 66, 67, 68, 69, 70, 71, 72, 81, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 100, 101, 102, 103, 104, 105

were read on this motion to/for            PREL INJUNCTION/TEMP REST ORDR            .

Upon the recommendations of Special Master Andrew Lorin, Esq., and the undersigned's independent review of the parties' written submissions, the two motions seeking preliminary injunctive relief are granted.

The first motion (Motion Sequence No. 001) is brought by plaintiff Alexander Park Mezz LLC ("Mezz Borrower"). A temporary restraining order ("TRO") was granted on October 16, 2025. The motion seeks a preliminary injunction enjoining defendant Kore Fund, Ltd. ("Mezz

[* 1]

Lender") from proceeding with a UCC sale of Mezz Borrower's interest in its subsidiary, Alexander Park Portfolio LLC (the "Mortgage Borrower"), the owner of two office buildings in Mercer County, New Jersey (the "Equity Collateral"). NYSCEF Doc. No. 44.

The second motion (Motion Sequence No. 003) is brought by the Mezz Lender, as a third-party plaintiff. A TRO was granted on October 24, 2025. The motion seeks a preliminary injunction enjoining third-party defendant RL Alexander Park LLC ("Mortgage Lender") from enforcing a 90-day period for the Mezz Lender to take title to Equity Collateral pursuant to the intercreditor agreement between the Mezz Lender and the Mortgage Lender (the "Intercreditor Agreement"). NYSCEF Doc. No. 72.

**Motion Sequence No. 001**

The original action and the third-party action arise out of two loans made by Natixis Real Estate Capital LLC (the "Original Lender"), both entered into on July 23, 2021, and made to related parties: a mezzanine loan (the "Mezz Loan") to the Mezz Borrower and a mortgage loan (the "Mortgage Loan") to the Mezz Borrower's subsidiary, the Mortgage Borrower. The Mortgage Lender and the Mezz Lender assert that they are assignees of the Original Lender, although neither has supplied the Court with any assignment documents establishing same.

The Mezz Loan provided the Mezz Borrower with two opportunities to extend the loan's maturity date in successive 12-month increments. The Mezz Borrower exercised its first extension in 2024, thereby extending the maturity date of the loan to August 9, 2025. Commencing on June 4, 2025, the Mezz Borrower again sought to extend the maturity date of the loan, this time to August 9, 2026, in a series of email communications between the Mezz Borrower and Rok Lending LLC ("Rok"), which also appears to have been an assignee of the Mortgage Loan.

659104/2025   ALEXANDER PARK MEZZ, LLC vs. KORE FUND, LTD.                    **Page 2 of 8**
Motion No. 001 003

2 of 8

In those communications, the Mezz Borrower notified the Mezz Lender, through Rok, on multiple occasions that it intended to exercise its second extension option. However, even though the Equity Collateral was generating significant cash which was more than sufficient to timely pay all of the Mezz Borrower's loan payments as they became due, and even though the evidence indicates that both lenders were and are overcollateralized, the parties' discussions regarding the extension became subject to a dispute regarding the "debt yield analysis" under the Mezz Loan agreements.

Although the Mezz Lender has pointed to no deterioration in the value or performance of the Equity Collateral after the first extension was granted in 2024, the Mezz Lender nonetheless asserted with regard to the 2025 extension that, under its calculation of the debt yield, the Mezz Borrower would this time be required to pay more than $4 million to exercise the extension. By contrast, the Mezz Borrower asserted that, under its calculation of the debt yield, the Mezz Borrower would not have to pay anything to exercise the extension, just as it had done the prior year. At this stage of the proceedings, the evidence submitted by the Mezz Borrower supporting its calculation is more persuasive than the evidence submitted by the Mezz Lender in this regard.

As a result of the foregoing dispute, the Mezz Lender took the position that, although the Mezz Borrower was not in any financial default on the loan payments, it was nonetheless in "maturity default" and the Mezz Lender on those grounds started the process of foreclosing on the collateral, i.e., the Mezz Borrower's interest in the Mortgage Borrower. As part of that process, the Mezz Lender also asserted several other covenant (i.e., non-financial) defaults, of which the Mezz Borrower had not been previously notified and given the opportunity to cure. These include the existence of three mechanic's liens on the property (of which only one modest lien, currently in settlement discussions, remains) and the Mezz Borrower's replacement of the

659104/2025  ALEXANDER PARK MEZZ, LLC vs. KORE FUND, LTD.  Page 3 of 8
Motion No. 001 003

3 of 8

[* 3]

property manager (for which the Mezz Borrower had contemporaneously received consent from the prior lender).

The Mezz Borrower has also submitted evidence indicating that the UCC sale was inadequately advertised, insufficiently noticed, unnecessarily rushed, and deliberately fashioned so as to chill the bidding process. While the Mezz Lender has asserted countervailing evidence in this regard, the Court at this stage of the proceedings is not convinced that all aspects of the UCC sale as implemented sufficiently protected the Mezz Borrower's interests.

The Mezz Borrower has asserted its belief, taking all of the foregoing into account – *i.e.*, that the Mezz Loan is current and supported by ample income stream, that the loans are overcollateralized, that the alleged defaults are non-monetary in nature and are not alleged to have materially impacted the value or soundness of the Equity Collateral, that the Mezz Borrower was not given notice and opportunity to cure the alleged non-monetary defaults, that (if the extension option was properly exercised) there remains less than one year left on the term of the loan, that the UCC sale process has been rushed and defective, etc. – that the Mortgage Lender is using a pretextual strategy to force a hasty fire sale of the valuable collateral.

In addition, the Mezz Lender has pointed to Section 11.13 of the Mezzanine Loan Agreement which provides that, where the Mezz Borrower is asserting that the Mezz Lender acted unreasonably, the Mezz Borrower cannot recover "monetary damages, and Borrower's sole remedy shall be limited to commencing an action seeking injunctive relief or declaratory judgment" – just as Mezz Borrower has in fact done in this case. NYSCEF Doc. No. 50 ¶ 11.13.

Finally, while the Mezz Borrower has established substantial harm from the UCC sale, the Mezz Lender has failed to show any substantial harm from the entry of the proposed

659104/2025  ALEXANDER PARK MEZZ, LLC vs. KORE FUND, LTD.                    Page 4 of 8
Motion No. 001 003

[* 4]                                           4 of 8

preliminary injunction that cannot be addressed by the Mezz Borrower's posting of a bond and by the disposition of the Mezz Lender's motion as set forth below.

Considering the foregoing, the Mezz Borrower has established at this stage of the proceedings a likelihood of success on the merits, irreparable harm, and a balance of equities decidedly in its favor. Accordingly, the motion is granted with an understanding that the final merits of the parties' respective legal positions may be resolved in the context of a dispositive motion after the completion of appropriate discovery.

Regarding the aforementioned bond, the only substantial harm that the Mezz Lender has specifically identified that may result from the stay of the UCC sale is the possibility of incurring additional foreclosure costs in the event that a UCC sale may go forward in the future. Accordingly, to protect the Mezz Lender if it is ultimately determined that the preliminary injunction was improvidently granted, the Mezz Borrower shall post a bond for $100,000 on or before November 30, 2025.

**Motion Sequence No. 003**

As noted above, in Motion Sequence No. 003 the Mezz Lender requests the entry of a preliminary injunction enjoining the Mortgage Lender from enforcing a 90-day period for the Mezz Lender to take title to Equity Collateral pursuant to the Intercreditor Agreement between the Mezz Lender and the Mortgage Lender. In essence, the Mezz Lender is seeking, in this limited contractual regard, to preserve the status quo between it and the Mortgage Lender.

Because the Mezz Borrower has demonstrated its entitlement to a delay in the UCC sale, the knock-on effect of that delay is that it will prejudice certain of the Mezz Lender's rights under the Intercreditor Agreement. Specifically, under the Intercreditor Agreement, the Mezz Lender has only 90 days to complete the UCC sale and take title to the Equity Collateral. The

659104/2025 ALEXANDER PARK MEZZ, LLC vs. KORE FUND, LTD. Page 5 of 8
Motion No. 001 003

[* 5]

5 of 8

Mezz Lender is thus concerned that, with the UCC sale stayed, if the Court ultimately determines that there was in fact a maturity default, then, absent an extension of this period, the Mezz Lender will have failed to contractually comply with the 90-day period. Under that outcome, the Mortgage Lender will not have been in breach of the Intercreditor Agreement, and thus not subject to a claim for monetary damages, but the Mezz Lender will nevertheless have been deprived of its economic interest in the Mezz Loan and contractual rights against Mortgage Lender, thereby suffering irreparable harm without any monetary remedy. In addition, to the extent that the Mortgage Lender may be a special purpose entity without assets other than the Mortgage Loan, the Mezz Lender's recovery of any monetary damages would become highly speculative.

The Mezz Lender also points to the Intercreditor Agreement, which provides that the Mortgage Lender and the Mezz Lender:

> each acknowledges (and waives any defense based on a claim) that *monetary damages are not an adequate remedy* to redress a breach by the other hereunder and that a breach by either [Mortgage] Lender or Mezzanine Lender hereunder *would cause irreparable harm* to the other. Accordingly, each of [Mortgage] Lender and Mezzanine Lender agrees that upon a breach of this Agreement by the other, *the remedies of injunction, declaratory judgment and specific performance shall be available* to such non-breaching party.

NYSCEF Doc. No. 57 30 (emphasis added). Accordingly, the Mortgage Lender has acknowledged and agreed that if it breached the Intercreditor Agreement then: (1) it has caused irreparable harm to the Mezz Lender; (2) an injunctive remedy is available to the Mezz Lender; and (3) the Mortgage Lender has waived any defense it has to argue otherwise.

In light of the foregoing, the Mezz Lender has sufficiently shown irreparable harm.

The Mortgage Lender contends that Mezz Lender is improperly attempting to assert the Mortgage Borrower's rights. However, the Mezz Lender's papers make clear that it is not

seeking to exercise the rights of others but rather acting to preserve its own rights in the distinctly possible contingent event that it is determined that there was a maturity default.

The Mortgage Lender further argues that the Mezz Lender's motion is premature. However, the Mezz Lender has asserted declaratory judgment claims seeking to clarify its rights that are currently subject to injury. Accordingly, the motion, which aims to preserve the status quo pending the determination of the declaratory judgment claims, is ripe for adjudication.

In this regard, the Mezz Lender is, to some extent, caught between the Mezz Borrower, which insists that there was no maturity default, and the Mortgage Lender, which insists that there was. While the Mezz Lender has previously also taken the position that there was a maturity default, it has now appropriately asserted as its first and primary cause of action a claim for a declaratory judgment to determine this critical issue, which bears directly on the Mezz Lender's own material rights and obligations. Because the goal of the declaratory judgment claim is to clarify its rights, the determination of the declaratory judgment claim in either direction will be a successful outcome for the Mezz Lender and the preservation of the status quo will, with the cloud of uncertainty lifted, then allow the Mezz Lender – indeed all the parties – to proceed accordingly.

Finally, while the Mezz Lender has established substantial potential harm from a failure to extend the 90-day period, the Mortgage Lender has failed to show any substantial harm from same. Indeed, the Mortgage Lender controls the receipt and distribution of income from the Equity Collateral and thus appears better protected than the other parties hereto from a continuation of the status quo.

Considering the foregoing, the Mezz Lender has established at this stage of the proceedings a likelihood of success on the merits, irreparable harm, and a balance of equities

decidedly in its favor. The motion is, accordingly, granted. Nonetheless, as noted above regarding the Mezz Borrower, the final merits of the parties' respective legal positions may be resolved in the context of a dispositive motion after the completion of appropriate discovery.

Despite a failure to establish substantial harm from an extension of the 90-day period, in an abundance of caution to protect the Mortgage Lender if it is ultimately determined that the preliminary injunction was improvidently granted, the Mezz Lender shall post a bond for $50,000 on or before November 30, 2025.

Accordingly, the motions for a preliminary injunction are granted, and the Mezz Borrower shall post an undertaking in the amount of $100,000 on or before November 30, 2025, and the Mezz Lender shall post an undertaking in the amount of $50,000 on or before November 30, 2025.

This constitutes the decision and order of this Court.

| 11/19/2025 | | | James d'Auguste, J.S.C. |
| --- | --- | --- | --- |
| DATE | | | |

CHECK ONE:

| | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| X | GRANTED | ☐ DENIED | | GRANTED IN PART | ☐ OTHER |

APPLICATION:

| | SETTLE ORDER | | | SUBMIT ORDER | |
| --- | --- | --- | --- | --- | --- |

CHECK IF APPROPRIATE:

| | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |
| --- | --- | --- | --- | --- | --- |

659104/2025  ALEXANDER PARK MEZZ, LLC vs. KORE FUND, LTD.
Motion No. 001 003

[* 8]